PRESENT:  Hassell, C.J., Lacy, Keenan, Kinser, Lemons, and Agee, JJ., and Carrico, S.J.

ROBERT I. JONES, SR.

                                              OPINION BY
v.  Record No. 030310          JUSTICE DONALD W. LEMONS
                                        JANUARY 16, 2004
COMMONWEALTH OF VIRGINIA, ET AL.

            FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                  PAUL M. PEATROSS, JR., Judge

     In this appeal, we consider whether the University of

Virginia ("the University") is a governmental entity for the

purposes of determining its status as a statutory employer under

the Virginia Workers' Compensation Act ("the Act"), Code

§§ 65.2-100 to –1310.

                 I.   Facts and Proceedings Below

     Robert I. Jones, Sr. ("Jones") was employed by Waco, Inc.

("Waco"), an independent contractor employed by the University

to perform asbestos abatement in a building on the grounds.

Part of this work included the removal of electrical conduits.

Jones received an electrical shock while attempting to remove an

electrical conduit.

     Jones filed a motion for judgment against the University

and its employees alleging that they had negligently informed

him that the electrical power to that conduit had been turned

off when the conduit actually contained live wires. The

defendants each filed pleas in bar based on the Act.  The

Commonwealth of Virginia, on behalf of the University, and the

individual defendants asserted that the University was the statutory employer of Jones because it is a governmental entity with a statutory mandate to maintain its buildings and Jones was engaged in the maintenance of a University building.

The trial court sustained the defendants' pleas in bar, dismissing Jones's action, and denied Jones's motion to reconsider on November 20, 2002. Jones appeals the adverse judgment of the trial court.

## II. Analysis

Jones asserts that the trial court erred by holding that the University is a governmental entity and that its trade or business included asbestos removal from buildings under its care and control. Further, Jones argues that the trial court erred in applying the exclusivity provision of the Workers' Compensation Act despite the language of the Virginia Tort Claims Act stating that "the Commonwealth shall be liable . . . where the Commonwealth . . ., if a private person, would be liable . . . ." Code § 8.01-195.3.

The Virginia Workers' Compensation Act provides that:

When any person (referred to in this section as "owner") undertakes to perform or execute any work which is a part of his trade, business or occupation and contracts with any other person (referred to in this section as "subcontractor") for the execution or performance by or under such subcontractor of the whole or any part of the work undertaken by such owner, the owner shall be liable to pay to any worker employed in the work

2

> any compensation under this title which he would
> have been liable to pay if the worker had been
> immediately employed by him.

Code § 65.2-302(A). This "statutory employer" provision is designed to ensure that owners do not escape liability for workers' compensation benefits by having their work performed by others. Henderson v. Central Tel. Co., 233 Va. 377, 381, 355 S.E.2d 596, 598-99 (1987); Smith v. Horn, 232 Va. 302, 305-06, 351 S.E.2d 14, 16 (1986).

In this case, the University was the owner of the building on which Jones was working when he was injured. Once an owner is found to be a statutory employer, it is subject to all the mandates, duties, and rights as to its statutory employee mandated by the Act, including the "exclusivity rule." The exclusivity rule provides that when an employee is eligible for remedy under the Act, he or she may not seek any other remedy against the employer or his fellow employees. See Code § 65.2-307(A).

As discussed below, the analysis of the liability as an owner for governmental entities and private entities differs. In other words, state agencies, municipalities, and counties are treated differently from private corporations and individuals. Jones argues that we have never extended governmental entity status to a college or university under the Act. However, both

3

statutory language and case law indicate that the University is entitled to governmental entity status.

The most obvious difference between a governmental entity and a private entity is that the control of a governmental entity ultimately lies with publicly elected officials.  Code § 23-69 establishes the Board of Visitors of the University as a public corporation that is "at all times subject to the control of the General Assembly."  It would challenge reason to suggest that an institution, subject at all times to the control of the legislature, is not a governmental entity.

In Phillips v. Rector and Visitors of Univ. of Va., 97 Va. 472, 474, 34 S.E. 66, 67 (1899), we held that buildings owned by the University could not be subject to mechanic's liens because the University's buildings were protected by the general rule that mechanic's liens "do not, in the absence of express provisions, apply to public buildings erected by States, counties, and towns for public uses."  In determining "the nature of the University of Virginia," we noted that "the University, from its foundation, has been wholly governed, managed, and controlled by the State . . . and private individuals have no interest in or control over it."  Id. at 475, 34 S.E. at 67.  We pointed to language nearly identical to that in the current Code "provid[ing] that the Rector and

4

Visitors should be at all times subject to the control of the General Assembly." Id. We concluded that the University's property should be treated like the property of a state, county, or town because

> the University . . . is in the strictest sense a
> public institution, and that its grounds and
> buildings are public property, the property of
> the State; that it is governed and controlled
> solely by the State; that its grounds and
> buildings are wholly dedicated to public uses;
> and that the interest of the public constitutes
> its ends and aims.

Id. at 475-76, 34 S.E. at 67.

The reasoning that led to our holding in Phillips applies here with equal force. The characteristics of the University informing our decision in that case are the same here. Although we did not use the specific term "governmental entity" in Phillips, certainly an entity that is established by statute, is governed and controlled solely by the General Assembly, owns property through money appropriated by the General Assembly, and whose very essence is public use and service is a governmental entity, is to be treated in the same manner as municipalities for the purposes of the Act.

In a situation in which an employee of an independent contractor sues a private entity that owns a project, we have applied the "normal work test" to determine whether the injured party was engaged in the trade, business, or occupation of the

5

owner at the time of his or her injury.  See Bassett Furniture Indus., Inc. v. McReynolds, 216 Va. 897, 902-03, 224 S.E.2d 323, 326-27 (1976); Johnson v. Jefferson Nat'l Bank, 244 Va. 482, 485, 422 S.E.2d 778, 780 (1992).  However, the normal work test does not apply to the determination of the trade, business, or occupation of a governmental entity.

In Nichols v. VVKR, Inc., 241 Va. 516, 403 S.E.2d 698 (1991), we held:

> A governmental entity or a public utility does not share the ability to choose its activities.  Therefore, if the project's owner is a governmental agency or a public utility, any activity which the owner is authorized or required to do by law or otherwise, is considered the trade, business, or occupation of the owner.

Id. at 521, 403 S.E.2d at 701.  See Henderson, 233 Va. at 383-85, 355 S.E.2d at 599-601; Ford v. City of Richmond, 239 Va. 664, 667, 669, 391 S.E.2d 270, 271-73 (1990).  The unique nature of a governmental entity requires examination of statutory authorization and mandated duties to determine the entity's trade, business, or occupation.  What the legislature has authorized or required an entity to do is the trade, business, or occupation of the entity, whatever the frequency with which

6

the task is performed or the number of employees directly employed to perform the task.[*]

Jones relies on Board of Supervisors v. Boaz, 176 Va. 126, 10 S.E.2d 498 (1940), to support his argument that the University was not his statutory employer because building repair is not the University's trade, business, or occupation. Boaz, however, is inapplicable. The opinion in Boaz was based largely on the fact that the Act at that time did not include the Commonwealth and its political subdivisions in its provisions. Id. at 130, 10 S.E.2d at 499. The Act has long

---

[*] We have held cities, a ferry district, and a turnpike authority to be governmental entities whose trade, business, or occupation is defined by statute, irrespective of the number of the entity's own employees engaged in the work that resulted in injury to a contractor's employee. See Ford v. City of Richmond, 239 Va. 664, 669, 391 S.E.2d 270, 273 (1990) (holding that the city of Richmond was the statutory employer of the employee of a contractor hired to repair the roof on a water reservoir); Roberts v. City of Alexandria, 246 Va. 17, 19-20, 431 S.E.2d 275, 276-77 (1993) (holding that the City of Alexandria was the statutory employer of an employee of a medical services provider contracted to provide medical services at the city jail); Williams v. E.T. Gresham Co., 201 Va. 457, 464-65, 111 S.E.2d 498, 503-04 (1959) (holding that the Chesapeake Bay Ferry District was the statutory employer of the employees of a contractor hired to drive piles for a ferry landing even though Ferry District employees had never driven piles on their own); Anderson v. Thorington Construction Co., 201 Va. 266, 271-72, 110 S.E.2d 396, 400-01 (1959) (holding that a turnpike authority was the statutory employer of the employee of an engineering firm contracted to consult on the construction on a portion of the turnpike despite the fact that the Authority did not directly employ any individuals engaged in construction-related work). The statutory language on which these decisions have been based has not been materially altered and the reasoning in these cases is instructive here.

7

since been amended to specifically include the Commonwealth and its subdivisions.  We have previously noted that Boaz is no longer applicable law.  See Ford at 668-69, 391 S.E.2d at 272-73.

The University is a governmental entity.  Its powers and duties, exercised by the Rector and Visitors of the University, are created by statute and are controlled by the General Assembly.  Code §§ 23-62 to -91.23:1.  Applying the rule established in Nichols, any activity of the University authorized or required by statute is the trade, business, or occupation of the University for purposes of the Act.  Pursuant to Code § 23-76, the University's Board of Visitors "shall be charged with the care and preservation of all property belonging to the University."  Accordingly, the care and preservation of the University's buildings is part of the trade, business, or occupation of the University.  The asbestos abatement performed by Jones and Waco was part of the maintenance of the University's buildings; therefore, Jones was involved in the trade, business, or occupation of the University at the time of his injury.  The University was his statutory employer; consequently, Jones is barred from seeking a remedy in tort against the University and its employees.

Additionally, Jones argues that the Virginia Tort Claims Act, Code §§ 8.01-195.1 to -195.9, requires the court to treat a

governmental entity as though it were a private person under the Workers' Compensation Act.  We disagree.  The Tort Claims Act is a waiver of the state's sovereign immunity in certain circumstances allowing the imposition of liability equivalent to that of a private entity.  Id.  Because the Tort Claims Act is a statute in derogation of the common law, its limited waiver of immunity must be strictly construed.  See Baumgardner v. Southwestern Va. Mental Health Inst., 247 Va. 486, 489, 442 S.E.2d 400, 402 (1994); Hyman v. Glover, 232 Va. 140, 143, 348 S.E.2d 269, 271 (1986); Norfolk & W. Ry. v. Virginian Ry., 110 Va. 631, 646, 66 S.E. 863, 868 (1910).  The Tort Claims Act does not waive other jurisdictional bars or defenses available to the Commonwealth and its agencies.  Code § 8.01-195.3.  The exclusivity bar under the Workers' Compensation Act is a jurisdictional bar independent of the doctrine of sovereign immunity, applying to private and governmental entities in like manner.

For the reasons stated, we hold that Jones is a statutory employee of the University of Virginia and is barred by the workers' compensation exclusivity rule from pursuing his tort claim against the University and its employees.  The trial court did not err in granting the defendants' pleas in bar and we will affirm its judgment.

Affirmed.